THE STATE OF OHIO, APPELLEE, *v.* GEESLIN, APPELLANT.

[Cite as *State v. Geeslin,* 116 Ohio St.3d 252, 2007-Ohio-5239.]

(No. 2006–0882—Submitted March 14, 2007—Decided October 11, 2007.)

CUPP, J.

{¶ 1} In this appeal, we are asked to determine whether a defendant's due process rights are violated when evidence in the hands of the state is lost or destroyed. For the reasons that follow, we hold that unless a defendant can show that the state acted in bad faith, the state's failure to preserve potentially useful evidence does not violate a defendant's due process rights.

### Facts and Procedural History

{¶ 2} Appellant James Geeslin's vehicle was stopped by Ohio State Highway Patrol Trooper Tim Wenger in the early morning hours of August 16, 2004. At a hearing in the trial court on a motion to dismiss, Trooper Wenger testified that he had stopped appellant because he had observed appellant's vehicle cross the white edge line of the roadway several times. Upon approaching the vehicle, Trooper Wenger smelled alcohol. He also observed that appellant's eyes were bloodshot and glassy. Upon questioning by Trooper Wenger, appellant stated that he had been drinking. Trooper Wenger then had appellant perform standard field sobriety tests. Appellant performed poorly on them, according to Wenger. Trooper Wenger also administered a breath test for the presence of alcohol, which resulted in a reading of .176 grams of alcohol per 210 liters of breath.

{¶ 3} The patrol car assigned to Wenger on the day of appellant's arrest was equipped with a video camera and video-recording system. Trooper Wenger used that equipment to record his stop of appellant's vehicle. At the conclusion of Trooper Wenger's shift, he removed the videotape from the recording system in his patrol car according to his usual procedure. Trooper Wenger reviewed the tape several times and apparently rewound it when he was finished. Trooper Wenger was assigned a different patrol car for his next shift, and upon reporting for that shift, he placed the videotape that had been used to record appellant's stop into that patrol car's video-recording system.

{¶ 4} The recording system has a feature that automatically fast-forwards a videotape to a blank portion of the tape to avoid recording over an already recorded event. Trooper Wenger had been a trooper for less than six months at the time of this incident, and he testified that he was unaware that this fast-forward feature will not work with a videotape once it is removed from the recorder and is then reinserted. Thus, when he inserted the videotape into the different video recorder on his shift following appellant's arrest and started to record, the recorder did not fast-forward to a blank portion of the tape. Trooper Wenger testified that when he realized that the recorder had not fast-forwarded, he stopped recording, but by then, the portion of the videotape containing appellant's driving had been recorded over. The only relevant events remaining on the videotape relating to appellant's arrest are those that occurred after appellant was stopped.

{¶ 5} Appellant was subsequently indicted on two felony counts of operating a motor vehicle while intoxicated in violation of R.C. 4511.19. He moved to dismiss the charges. Contending that the portion of the videotape recorded over contained possible exculpatory evidence and that the state had destroyed that evidence, appellant asserted that he was deprived of due process of law.

{¶ 6} Following the trial court's hearing on the motion to dismiss, the trial court granted appellant's motion. The trial court stated that the facts were not in dispute, and thus the only issue was whether the missing portion of the tape was inculpatory or exculpatory. Because the state had destroyed the evidence related to that issue, the trial court held that the issue must be resolved in favor of the defendant. On appeal, the court of appeals reversed, and we accepted appellant's discretionary appeal to this court.

Analysis

{¶ 7} This court has recognized, in accordance with the decision of the Supreme Court of the United States in *Brady v. Maryland* (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215, that the suppression of materially exculpatory evidence violates a defendant's due process rights, regardless of whether the state acted in good or bad faith. *State v. Johnston* (1988), 39 Ohio St.3d 48, 60, 529 N.E.2d 898.

We are asked to decide in this case whether a due process violation also occurs when evidence in the state's possession is not purposely suppressed, but is lost or destroyed.

{¶ 8} The court of appeals devoted a portion of its analysis to whether appellant had requested that the state provide him with the evidence in question prior to its destruction. Yet "[e]ven in the absence of a specific request, the prosecution has a constitutional duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *California v. Trombetta* (1984), 467 U.S. 479, 485, 104 S.Ct. 2528, 81 L.Ed.2d 413, citing *United States v. Agurs* (1976), 427 U.S. 97, 112, 96 S.Ct. 2392, 49 L.Ed.2d 342. However, we do not believe this case turns on that fact. The evidence in this case was destroyed within 24 hours of appellant's arrest, and under those circumstances, appellant could not reasonably be expected to have requested it prior to its loss. We therefore do not need to address whether appellant had a burden to first request from the state the evidence in question. Our inquiry here is what standard should apply in evaluating an alleged due process violation based on lost or destroyed evidence.

{¶ 9} The Supreme Court of the United States addressed this issue in *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281. In that case, the court stated: "The Due Process Clause of the Fourteenth Amendment, as interpreted in *Brady,* makes the good or bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence. But we think the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." Id. at 57, 109 S.Ct. 333, 102 L.Ed.2d 281. In that situation, the court held, "Unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Id. at 58, 109 S.Ct. 333, 102 L.Ed.2d 281.

{¶ 10} A clear distinction is drawn by *Youngblood* between materially exculpatory evidence and potentially useful evidence. If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation.

{¶ 11} In this case, however, the court of appeals concluded that under *Youngblood,* evidence is classified as "potentially useful" only if further testing is required to determine whether the evidence favors the defendant. And since the videotape at issue in this case would not have required further testing to determine whether it favored appellant, it did not fall within the "potentially useful" category and was instead either exculpatory or inculpatory. We respect-

fully disagree with the court of appeals' analysis, because the evidence destroyed in this case would not have been materially exculpatory or inculpatory of the charged crimes.

{¶ 12} The missing evidence in this case—the portion of the videotape that showed defendant's driving prior to the traffic stop—would not have been used for the purpose of establishing appellant's guilt or innocence. Counsel acknowledged as much at oral argument: Appellant would have used it to refute Trooper Wenger's stated reasons for stopping appellant, or the state would have used it to bolster Trooper Wenger's testimony in that regard.[1] In other words, the missing portion of the tape would have been used only to challenge or corroborate the justification for the stop. In fact, the portion of the tape that would presumably be used for exculpatory or inculpatory purposes, i.e., the portion showing the conduct of the field sobriety tests and subsequent arrest, is still available.

{¶ 13} This difference distinguishes this case from several decisions cited by the parties. In those cases, the defendants sought the missing or destroyed videotape evidence to challenge the *substance* of the allegations against them. See *State v. Benson,* 152 Ohio App.3d 495, 2003-Ohio-1944, 788 N.E.2d 693; *State v. Durnwald,* 163 Ohio App.3d 361, 2005-Ohio-4867, 837 N.E.2d 1234. Here, the missing evidence would not have been used to acquit appellant of the impaired-driving charge itself. Rather, it would have been used only with regard to the validity of the stop that led to appellant's arrest. We conclude, therefore, that the missing evidence in this case could not have been materially exculpatory evidence within the meaning of *Brady,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *Johnston,* 39 Ohio St.3d 48, 529 N.E.2d 898; and *Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342; but was instead potentially useful evidence.

{¶ 14} Having concluded that the missing evidence could not have been exculpatory, but rather, may have been useful to appellant in challenging the basis for his stop, we must next determine whether the state acted in bad faith. Appellant can demonstrate a violation of his due process rights under these circumstances only upon a showing of bad faith in the destruction of the evidence. *Youngblood,* 488 U.S. at 58, 109 S.Ct. 333, 102 L.Ed.2d 281. In the present case, Trooper Wenger testified that recording over the tape was accidental. The trial court, which was in the best position to weigh the evidence and the credibility of the witnesses, concluded: "The evidence clearly establishes that the loss or destruction of the nine to ten minute portion of the videotape was accidental."

---

1. Trooper Wenger testified at the hearing on the motion to dismiss that he had observed appellant cross the white edge line of the roadway three times, while appellant denied that he had crossed the edge line. However, whether Trooper Wenger's stop of appellant was justified was never before the trial court. The motion to dismiss was granted prior to that issue being raised or considered.

Consequently, appellant has failed to demonstrate bad faith on the part of the state in the loss of the evidence.

## Conclusion

{¶ 15} For the foregoing reasons, we hold that unless a defendant can show that the state acted in bad faith, the state's failure to preserve potentially useful evidence does not violate a defendant's due process rights. The appellant herein having failed to satisfy this standard, the judgment of the court of appeals is affirmed.

Judgment affirmed.

MOYER, C.J., and LUNDBERG STRATTON, O'CONNOR, and LANZINGER, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 16} The majority opinion neglects to mention that when Trooper Wenger reviewed the videotape at the conclusion of his shift in order to complete his written report, he did so not only at the Highway Patrol Post but also at his home. This is significant because Geeslin complains that Trooper Wenger lacked probable cause to effect a valid traffic stop, and the portion of that videotape that could either prove or refute his claim no longer exists because it has been erased.

{¶ 17} I concur with the analysis provided in the majority opinion regarding the application of *Arizona v. Youngblood* (1988), 488 U.S. 51, 109 S.Ct. 333, 102 L.Ed.2d 281, to the facts of this case. Upon review of the record, it is apparent that the trial court determined that because the state had destroyed evidence, the court would resolve the issue of whether the evidence on the missing tape was inculpatory or exculpatory in Geeslin's favor. In my view, the issue is more refined than that. In accordance with *Youngblood,* the defendant bears the burden of demonstrating bad faith on the part of the police in destroying the potentially useful evidence. In the absence of such a showing, the failure to preserve potentially useful evidence does not constitute a denial of due process.

{¶ 18} Here, however, it is undisputed that Trooper Wenger reviewed his patrol car videotape at home after his shift ended and that subsequent to that viewing, it was discovered that the relevant portion of the tape had been destroyed. In my view, Trooper Wenger's screening of the tape at his home presents an issue as to whether the tape was destroyed in bad faith. This fact was not mentioned in the trial court's opinion, and thus I believe that the matter deserves further consideration by the trial court. Accordingly, I would reverse

the judgment of the court of appeals and remand this cause to the trial court for a determination whether the videotape was destroyed in bad faith.

PFEIFER, J., concurs in the foregoing opinion.

———————

Andrew J. Hinders, Mercer County Prosecuting Attorney, and Matthew K. Fox, Assistant Prosecuting Attorney, for appellee.

James A. Tesno, for appellant.