[Cite as *State v. Levell*, **2017-Ohio-9055**.]

**IN THE COURT OF APPEALS OF OHIO**
**SECOND APPELLATE DISTRICT**
**MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27489 |
| | : | |
| v. | : | Trial Court Case No. 16-CR-369/2 |
| | : | |
| EBON LEVELL | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 15th day of December, 2017.

. . . . . . . . . .

MATHIAS H. HECK, JR., by ALICE B. PETERS, Atty. Reg. No. 0093945, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
      Attorney for Plaintiff-Appellee

SEAN BRINKMAN, Atty. Reg. No. 0088253, 10 West Monument Avenue, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . . .

HALL, P.J.

{¶ 1} Ebon Levell appeals from his convictions for receiving stolen property. Finding no error, we affirm.

## I. Background

{¶ 2} In April 2014, a car with an expired vehicle registration drove past Montgomery County Deputy Sheriff Matthew Wright while he was on patrol, so he initiated a traffic stop. The vehicle was driven by Levell. Deputy Wright explained to him the reason for the stop and asked Levell for his driver's license and proof of insurance. Levell admitted that he did not have a license. Because without a license Levell could not legally drive the car, Deputy Wright had Levell sit in the back of his police cruiser while he conducted an inventory search of the car in preparation for towing. In the car, Wright found boxes of prescription medication with labels indicating that they were prescribed to patients at Wood Glen Alzheimer's Community in Dayton. When Wright asked Levell about the medication, Levell told him that his wife, Tyreca Rippley, worked as a nurse at Wood Glen. Deputy Wright, believing that the medication was stolen from Wood Glen, then contacted his supervisor and requested assistance.

{¶ 3} Deputy Wright wrote Levell citations for the traffic offenses and spoke to him about the medication.[1] Levell blamed his wife for stealing them from Wood Glen. He admitted that he knew she was stealing items from work and said that he had told her to stop. And Levell admitted that he had noticed the stolen items piling up in her car over time.

---

[1] Levell filed a motion to suppress his statements to law enforcement officers. After a hearing, the trial court overruled the motion to suppress.

{¶ 4} Deputy Tony Ball arrived to photograph the car and collect and package its contents. He found three boxes of blister pack Seroquel: an unopened box containing thirty 200 milligram tablets, an open box containing twelve 100 milligram tablets, and an open box containing twenty-three Seroquel 50 milligram tablets and three 100 milligram tablets. Each of the boxes of Seroquel had a label indicating that it was prescribed to H.K. at Wood Glen Alzheimer's Community. Deputy Ball also found a box containing twenty-one 1000 milligram tablets of Valtrex. The label on the box indicated that it was prescribed to N.D. at Wood Glen Alzheimer's Community. Deputy Ball packaged all of the boxes as evidence, turned them over to another officer for storage in the property room, and generated a lab submission sheet requesting that an analysis of the medication be done by the Miami Valley Regional Crime Lab.

{¶ 5} Matthew Fox, a former employee of the Miami Valley Regional Crime Lab and an expert in drug chemistry and toxicology, analyzed the medication. He physically identified the tablets in the three boxes of Seroquel as containing quetiapine, a drug that may be dispensed only with a prescription. Quetiapine is marketed under the brand name Seroquel. Fox also physically identified the tablets in the box of Valtrex as containing valacyclovir, another drug that may be dispensed only with a prescription. Valacyclovir is marketed under the brand name Valtrex.

{¶ 6} According to Angie Copley, the Director of Nursing at Wood Glen Alzheimer's Community, Wood Glen cares for patients with Alzheimer's and dementia. She said that although there is not a pharmacy on site, Wood Glen keeps patients' medications on site. Copley said that Wood Glen carefully monitors the medications and has a strict set of procedures in place that nurses must follow in administering medications. If a medication

is not used, such as when a patient passes away, a nurse must count, package, and place the medication in a bin in the medication room. All Wood Glen nurses, said Copley, are trained on these procedures. She further testified that Tyreca Rippley, Levell's wife, was employed at Wood Glen from April 2010 to April 25, 2014, when she was terminated. Copley said that H.K. was a resident at Wood Glen in March and April 2014 and was prescribed Seroquel. And she said that N.D. was a patient during that same time and was prescribed Valtrex.

{¶ 7} The Montgomery County Prosecutor's Office reviewed the case in 2014 shortly after Levell's arrest and decided not to seek charges. The same year, the medication was destroyed. After the prosecutor's review, the Department of Health opened its own investigation. In 2016, after the health department had completed its investigation, it passed on additional information to the prosecutor. Based on this new information, the prosecutor decided to seek charges.

{¶ 8} In April 2016, Levell was indicted on two counts of receiving stolen property (dangerous drugs) in violation of R.C. 2913.51(A), each a fourth-degree felony. Levell waived his right to a jury trial, and the case proceeded to bench trial in December 2016. Before trial began, Levell's trial counsel orally moved for an independent analysis of the medication found in the car involved in the case and orally moved to dismiss the case because the medication had been destroyed. The trial court denied the motion for independent testing because the medication had been destroyed and could not be tested. The court also denied the motion to dismiss but held the matter open to conduct additional research. After the trial, counsel renewed the motion to dismiss based on the destruction of the medication. The court overruled the motion, finding that the medications were only

potentially useful evidence and that they were not destroyed in bad faith. The trial court then found Levell guilty on both counts and sentenced him to community control for up to three years.

{¶ 9} Levell appealed.

## II. Analysis

{¶ 10} Levell presents two assignments of error for our review. The first challenges the manifest weight of the evidence supporting his convictions. The second presents a claim for ineffective assistance of trial counsel.

### A. *Manifest weight of the evidence*

{¶ 11} The first assignment of error alleges that Levell's convictions for receiving stolen property are against the manifest weight of the evidence.

{¶ 12} "[A] manifest-weight challenge 'concerns "the inclination of the *greater amount of credible evidence* * * * to support one side of the issue rather than the other." ' " (Emphasis sic.) *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶ 75, quoting *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *Black's Law Dictionary* 1594 (6th Ed.1990). "A manifest-weight challenge requires us to consider the entire record, including the credibility of the witnesses, the weight of the evidence, and any reasonable inferences and determine whether ' "the [panel] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." ' " *Id.*, quoting *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 13} The receiving-stolen-property statute states: "No person shall receive, retain, or dispose of property of another knowing or having reasonable cause to believe

that the property has been obtained through commission of a theft offense." R.C. 2913.51(A). Accordingly, the state had to prove that Levell received, retained, or disposed of property that was not his and that he knew or had cause to believe that the property had been stolen.

{¶ 14} Levell first argues that the state failed to prove that the medication belonged to Wood Glen Alzheimer's Community, as alleged in the indictment. He concedes that the medication was taken from Wood Glen but says that the evidence does not show whether Wood Glen owned the medication or the patient owned it. Levell argues that the actual owner is significant because it determines the level of the offense. We disagree. By default, receiving stolen property is a first-degree misdemeanor. R.C. 2913.51(C). But it is a fourth-degree felony "if the property involved is a dangerous drug, as defined in section 4729.01 of the Revised Code." The definition of "dangerous drug" includes a drug that "may be dispensed only upon a prescription." R.C. 4729.01(F)(1)(b). Matthew Fox, the expert who analyzed the Seroquel and Valtrex found in Levell's car, testified that both are prescription medications.

{¶ 15} The state did not have to prove who the actual owner of the medication was because in a theft offense, "[i]t is the 'actor's,' i.e., the defendant's, relationship to the property which is controlling. The important question is not whether the person from whom the property was stolen was the actual owner, but rather whether the defendant had any lawful right to possession." *State v. Rhodes*, 2 Ohio St.3d 74, 76, 442 N.E.2d 1299 (1982). Similarly, the important question here is whether Levell "had any lawful right to possession," *Dayton v. Crane*, 2d Dist. Montgomery No. 16608, 1998 WL 22054, *3 (Jan. 23, 1998). There is no dispute that the medication was stolen and no evidence that Levell

had any right to the medication. Moreover, for purposes of theft offenses, "Owner" includes "any person * * * who has possession or control of" the property taken. R.C. 2913.01 (D). Levell fails to convince us that the nursing home was not included in the definition of "owner," or that it matters in this case who the actual owner of the stolen property was.

{¶ 16} Levell next argues that the state failed to prove that he received, retained, or disposed of the medication. "To be convicted upon a charge of receiving stolen property, it is necessary for the State to show that a defendant exercised possession of the stolen property." *State v. Jarman*, 2d Dist. Clark No. 1235, 1980 WL 352412, *3 (March 6, 1980). "Retain" means " 'to hold or continue to hold in possession or use: continue to have, use, recognize, or accept.' " *State v. Dilldine*, 2d Dist. Greene No. 09-CA-61, 2010-Ohio-3648, ¶ 13, quoting *In re Bromfield*, 1st Dist. Hamilton No. C-030446, 2004-Ohio-450, ¶ 14, quoting *Webster's Third New International Dictionary* 1938 (1993).

{¶ 17} "Actual possession is not required to be shown. Possession may be constructive. Constructive possession exists when an individual exercises dominion and control over an object, even though that object may not be within the immediate physical possession of that person." *Jarman* at *3, citing *State v. Wolery*, 46 Ohio St.2d 316, 348 N.E.2d 351 (1976). But "the mere fact that property is located within premises under one's control does not, of itself, constitute constructive possession." *State v. Hankerson*, 70 Ohio St.2d 87, 91, 434 N.E.2d 1362 (1982). "[A] person is not guilty of an offense unless * * * [t]he person's liability is based on conduct that includes either a voluntary act, or an omission to perform an act or duty that the person is capable of performing." R.C. 2901.21(A)(1). "Possession is a voluntary act if the possessor knowingly procured or

received the thing possessed, or was aware of the possessor's control of the thing possessed for a sufficient time to have ended possession." R.C. 2901.21(F)(1). So constructive possession requires that the person was conscious of the presence of the object. *Hankerson* at 91.

{¶ 18} Levell argues that the evidence does not show that he possessed the medication found in the car. He says that there is no evidence that he had actual physical possession of it. Levell also says that the evidence does not show that he had constructive possession, that he lacked control over the medication and did not know that the particular medication found was in the car. He points out that Deputy Wright admitted that the medication was not visible—some was in the trunk and the medication on the backseat was in plastic grocery bags. Levell also notes that he admitted only that at some time he saw medication in the car. He did not say when this was or what medication he saw.

{¶ 19} " '[T]he decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion.' " *State v. Flores-Lopez*, 2017-Ohio-690, 85 N.E.3d 534, ¶ 51 (2d Dist.), quoting *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Accordingly, "we defer more to decisions on what testimony should be credited, than we do to decisions on the logical force to be assigned to inferences suggested by evidence, no matter how persuasive the evidence may be." *State v. Brooks*, 2d Dist. Montgomery No. 21531, 2007-Ohio-1029, ¶ 28, citing *Lawson* at *4.

{¶ 20} We held in *State v. Ruby*, 149 Ohio App.3d 541, 2002-Ohio-5381, 778 N.E.2d 101 (2d Dist.), that the conviction for possession of drugs and drug paraphernalia

found in the vehicle of the defendant's wife, which the defendant was driving, was not against the manifest weight of the evidence. We concluded that the evidence was sufficient to prove that the defendant constructively possessed the drugs. The evidence showed that the defendant frequently had loaned the vehicle to other people, including known drug dealers, and that his wife had removed drug paraphernalia from the vehicle. The evidence also showed that earlier in the day on which the defendant was stopped by the police, he had loaned the vehicle to a known drug dealer, who happened to be in the car with the defendant. The contraband was found from the floor of the rear passenger compartment, behind the driver's seat. We rejected the defendant's argument that he did not know the contraband was in the vehicle.

{¶ 21} The Sixth Circuit Court of Appeals applying Ohio law in *Criss v. Kent*, 867 F.2d 259 (6th Cir.1988), concluded that a police officer had probable cause to arrest an accused for receiving stolen property where the apartment in which the accused resided had a city street sign on a wall in the living room that the accused claimed had been brought home by his roommate. "Ohio law is clear," said the court, "that a suspect can be in 'constructive possession' of stolen property without having actual physical possession of the property if it is located within premises under the suspect's control and he was conscious of its presence." *Criss* at 263, citing *Hankerson*, 70 Ohio St.2d at 91, 434 N.E.2d 162.

{¶ 22} Here, the evidence supports finding that Levell had constructive possession of the medication in the car. In Levell's admissions to Deputy Wright, it is not always clear when Levell is talking about what he knew and had seen in the past and what he knew and had seen the night he was stopped. But Levell's admissions do seem to suggest that

when he was stopped, he knew that there was stolen medication in the car. And he admitted that he knew his wife had been stealing from Wood Glen and that he had seen medication in the car and knew that his wife had taken it from Wood Glen. He was able to exercise dominion or control over the medication, and he knew that the medication was in the car. So Levell was aware that he controlled the medication "for a sufficient time to have ended possession."

{¶ 23} We cannot say that the evidence weighs heavily against the convictions, that the trial court lost its way, or that a manifest miscarriage of justice resulted.

{¶ 24} The first assignment of error is overruled.

## B. *Ineffective assistance of counsel*

{¶ 25} The second assignment of error alleges that Levell was denied the effective assistance of counsel.

{¶ 26} To show that his trial counsel was ineffective, Levell is "required to prove that his counsel's performance fell below an objective standard of reasonable representation and that the deficiency prejudiced him." *State v. Mohamed*, Ohio Sup. Ct. Slip Opinion No. 2017-Ohio-7468, ¶ 17, citing *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph two of the syllabus, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).

{¶ 27} Levell argues that he was denied the effective assistance of counsel because trial counsel failed to file a motion to suppress the medication, which was destroyed two years before Levell was indicted. He says that he did not have the opportunity to request an independent analysis of it. Levell acknowledges that counsel orally moved to dismiss the case based on the destruction of the medication but maintains

that counsel also should have filed a motion to suppress on this basis. Levell contends that he was prejudiced because he was unable to determine the reason for the medication's destruction and therefore whether there was any bad faith.

**{¶ 28}** Not filing a motion to suppress does not amount to ineffective assistance of counsel when "there was no reasonable probability of success." *State v. Nields*, 93 Ohio St.3d 6, 34, 752 N.E.2d 859 (2001). Here, filing a motion to suppress would not have met with success. Counsel orally moved to dismiss the case because the medication was not available for testing. The question was whether the destruction of the medication violated Levell's right to due process because the evidence was materially exculpatory or because the evidence was potentially useful and destroyed in bad faith. *See State v. McClain*, 2016-Ohio-838, 60 N.E.3d 783, ¶ 21 (2d Dist.) ("The Due Process Clause of the Fourteenth Amendment to the United States Constitution protects a criminal defendant from being convicted when the State either fails to preserve materially exculpatory evidence or destroys, in bad faith, potentially useful evidence."). The trial court found that the medication was only potentially useful evidence and that it was not destroyed in bad faith. A motion to suppress would have presented the same question. It is reasonable to expect that the trial court's answer would be the same. So filing a motion to suppress on the same basis would have been futile.

**{¶ 29}** "If the evidence in question is not materially exculpatory, but only potentially useful, the defendant must show bad faith on the part of the state in order to demonstrate a due process violation." *State v. Geeslin*, 116 Ohio St.3d 252, 2007-Ohio-5239, 878 N.E.2d 1, ¶ 10. In this record, there is no evidence that the destroyed evidence is materially exculpatory nor is there evidence that it was destroyed in bad faith. Because

the result would be no different had trial counsel filed an additional motion to suppress, we conclude that Levell fails to prove his claim that his trial counsel was ineffective.

{¶ 30} The second assignment of error is overruled.

### III. Conclusion

{¶ 31} We have overruled both of the assignments of error presented. The trial court's judgment is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and FROELICH, J., concur.

Copies mailed to:

Mathias H. Heck
Alice B. Peters
Sean Brinkman
Hon. Mary L. Wiseman